IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLENN MACK, JR.,<br>*Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE CORPORATION,<br>*Defendant* | : | No. 23-2430 |

**MEMORANDUM**

PRATTER, J.                                              MARCH 13, 2024

Glenn Mack, Jr., proceeding *pro se*, is suing Progressive Casualty Insurance Company for violating Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act, and the Pennsylvania Criminal History Record Information Act when Progressive withdrew its offer of employment after learning from Mr. Mack's background check that he had three prior misdemeanor convictions stemming from events with the Lower Merion Police Department in 2016. Mr. Mack argues that the police used "cover charges" against him for these convictions and that the use of such background checks in the hiring process adversely and disproportionately affects Black men like himself.

In response, Progressive filed a motion to compel arbitration and dismiss the complaint, arguing that Mr. Mack signed a Mutual Arbitration Agreement in his job application with Progressive. Mr. Mack argues that the arbitration clause is not enforceable due to undue influence, mistake/unconscionability, duress, and surprise. Though Mr. Mack includes novel legal arguments regarding the alleged discrimination he faced, the Court must grant the motion to compel where the Arbitration Agreement explicitly states that an arbitrator will resolve the enforceability of the

1

Arbitration Agreement. The Court will stay this matter until the arbitrator has made that determination.

## BACKGROUND

Glenn Mack, Jr. obtained a property and casualty insurance license from the Commonwealth of Pennsylvania in early 2017. Mr. Mack then entered the insurance industry and was employed in customer service and sales. Sometime in early 2022, Mr. Mack applied for a remote customer service representative position with Progressive Casualty Insurance Company.[1] After enduring a multi-step preemployment screening process, Progressive offered Mr. Mack a position with the company in the role for which he applied. Mr. Mack accepted the position, though the offer was contingent on Mr. Mack passing a background check.

In or about March 2022, Progressive notified Mr. Mack that the company was rescinding its offer because of unsatisfactory background check results. According to Mr. Mack, he failed the background check based on a March 2016 altercation with police that resulted in Mr. Mack being charged and convicted of disorderly conduct, resisting arrest, and simple assault. Mr. Mack claims that a police officer of the Lower Merion Police Department used unwarranted force with a taser and baton on Mr. Mack, and the police officer used these three "cover charges" to excuse such actions. At the time, police officers did not widely use body cameras, so there was no evidence to convict Mr. Mack other than the police officer's testimony about the events and Mr. Mack's depiction of the events.

Mr. Mack is now suing Progressive for discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA") and failure to hire in

---

[1] Mr. Mack refers to the company as "Progressive Insurance Company," though Progressive identifies the corporate name as "Progressive Casualty Insurance Company" in its motion to compel arbitration. Because Progressive is the party more likely to correctly identify the name of the corporate entity, the Court adopts Progressive's name as written in the motion to compel arbitration.

violation of the Pennsylvania Criminal History Record Information Act ("CHRIA"). Mr. Mack argues that Progressive's employment practice of using a background check in its hiring process adversely affects Black men like Mr. Mack where statistics show a nationwide disproportionate conviction rate for Black men, a larger disparity in Pennsylvania-specific data, and disproportionate arrest records of the Lower Merion Police Department. Mr. Mack also argues that Progressive's failure to hire him violates the CHRIA because the convictions had no connection with the position for which he applied where Mr. Mack would not have had any physical access to clients or employees.

Progressive filed the instant motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* Progressive argues that Mr. Mack signed a Mutual Arbitration Agreement ("Arbitration Agreement") when he completed and submitted his employment application. The Arbitration Agreement states that "both you and Progressive agree to resolve any and all such claims, disputes or controversies arising out of or relating to your application for employment with Progressive, your employment with Progressive, and/or the termination of your employment with Progressive exclusively by arbitration. . . ." According to Progressive, this language binds both Progressive and Mr. Mack to arbitration over his discrimination and failure-to-hire claims.

The Arbitration Agreement also includes an "Arbitrability" provision that states that the arbitrator "and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that this Agreement is void or voidable[.]" Progressive argues that the Court should grant the motion to compel arbitration because the "delegation provision" demonstrates that the parties agreed that an arbitrator decides whether Mr.

Mack's claims are subject to arbitration in the first place. Mr. Mack did not specifically challenge the delegation provision.

Mr. Mack argues that Progressive uses a "boiler plate adhesion one[-]sided contract" that is unenforceable for a number of reasons. Mr. Mack argues that the contract is not enforceable for undue influence, mistake/unconscionability, duress, and surprise. Mr. Mack also argues that there is a strong public policy that the presentation of evidence in this case should be publicly displayed "to ensure a full[,] complete[,] fair[,] transparent trial for the [C]ourt and the citizens of this [D]istrict."

## LEGAL STANDARD

### I. Appropriate Standard of Review

A motion to compel arbitration is evaluated under the same standard as either a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56, depending on the circumstances. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" *Id.* (alteration in original) (quoting *Somerset*, 832 F. Supp. 2d at 482).

"An arbitration clause may be deemed apparent when the contract in which the arbitration clause appears is integral to or relied upon in the complaint." *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642-KSM, 2022 WL 407396, at *3 (E.D. Pa. Feb. 9, 2022) (internal quotation marks omitted) (quoting *Lawson v. City of Philadelphia*, No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019)). The Rule 12(b)(6) standard is appropriate where the claims the plaintiff brings in his or her complaint are subject to arbitration provisions that the defendant may submit in response to the complaint. *See id.* at *4 (concluding Rule 12(b)(6) standard applied when plaintiffs claimed they were denied overtime pay and defendant submitted documents that contained arbitration provisions at issue). The Rule 12(b)(6) standard does not apply, though, if the plaintiff, in responding to the motion to compel arbitration, includes "additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776.

Here, Mr. Mack alleges discrimination and CHRIA violations. Mr. Mack's claims "arise[] out of Progressive's refusal to employ him due to" his previous conviction discovered through his background check. Compl. ¶ 11. The Arbitration Agreement that both Mr. Mack and an agent of Progressive signed states that covered claims include "discrimination or harassment on the basis of race" and "claims arising under any statutes, regulations[,] or other laws applicable to applicants, to employees, or to the employment relationship." The CHRIA limits the use of misdemeanor convictions "only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied" and is thus a statute applicable to the employment relationship. 18 Pa. Cons. Stat. § 9125(b). Thus, the Arbitration Agreement is integral to Mr. Mack's complaint.

"[B]ecause [Progressive] attaches the [Arbitration Agreement] to its motion to compel, the Rule 12(b)(6) standard governs unless [Mr. Mack] point[s] to 'additional facts sufficient to place

5

the agreement to arbitrate at issue.'" *Deardorff*, 2022 WL 407396, at *4. Mr. Mack has not done so. Progressive includes Mr. Mack's "Disqualification Questions" from his employment application that demonstrates that Mr. Mack selected "I agree" to the Arbitration Agreement. Mot. Compel Arbitration, Ex. B, Doc. No. 20-2. Progressive also includes Mr. Mack's electronic signature to his employment application. Mot. Compel Arbitration, Ex. C, Doc. No. 20-2. Mr. Mack does not contest that he agreed to the Arbitration Agreement or signed the employment application, and "an electronic signature constitutes a valid means of assent." *Deardorff*, 2022 WL 407396, at *4 (citing 73 Pa. Cons. Stat. § 2260.305). Mr. Mack also does not dispute that the Rule 12(b)(6) standard applies, which lends some credence to its applicability here. *See id.* at *5 (finding that plaintiffs not disputing Rule 12(b)(6) standard applied served as reason for court to apply Rule 12(b)(6) standard). Thus, the Rule 12(b)(6) standard applies.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court determines whether the plaintiff is entitled to relief under any "plausible" reading of the Complaint. *Guidotti*, 716 F.3d at 772 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents[.]" *Id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). The Court may also "consider the substance of the contracts that ostensibly compel arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## II. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") considers an arbitration agreement to be like any other contract; thus, the Court enforces an arbitration agreement according to its terms. *Id.* at 172 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 338–39 (2011)). "The FAA establishes

a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396 (3d Cir. 2020) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)). Because an arbitration agreement is treated like any other contract, it may be voidable by the same type of contract defenses to which all contracts are subject, such as fraud, duress, or unconscionability. *Deardorff*, 2022 WL 407396, at *5 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010)).

## DISCUSSION

### I. Threshold Issue of Arbitrability

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). The Supreme Court's decision in *Rent-A-Center* "recognized that contracting parties can agree that arbitrators, not courts, shall resolve arbitrability issues by including in the contract a so-called 'delegation provision' conferring upon the arbitrators the 'exclusive authority' to decide those gateway matters." *MZM*, 974 F.3d at 399 (citing *Rent-A-Center*, 561 U.S. at 68-69). "[U]nless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying *arbitration agreement* to the arbitrator." *Id.* (emphasis in original) (citing *Rent-A-Center*, 561 U.S. at 72). Thus, "[e]ven when the grounds for invalidating the delegation provision and the underlying agreement are the same, the arbitrability challenge must still be directed at the delegation provision specifically to invoke a court's power to intervene." *Id.* (citing *Rent-A-Center*, 561 U.S. at 71). "Following *Rent-A-Center*, courts in this Circuit have routinely applied the Supreme Court's holding that unless the party opposing arbitration challenges the delegation clause specifically, the delegation clause must be treated as valid under § 2 of the FAA and

7

questions of arbitrability must be decided by the arbitrator." *Deardorff*, 2022 WL 407396, at *7 (collecting cases).

Here, it is incontrovertible that the Arbitration Agreement includes such a delegation provision. The Arbitrability section clearly states that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that this Agreement is void or voidable[.]" Mot. Compel Arbitration, Ex. A at 2, Doc. No. 20-2. Mr. Mack selected "I agree" when presented with the Arbitration Agreement. Mot. Compel Arbitration, Ex. B, Doc. No. 20-2. The Arbitration Agreement also states that Progressive and the prospective employee agree to be bound by arbitration "to be administered by the American Arbitration Association ('AAA')." Mot. Compel Arbitration, Ex. A at 1, Doc. No. 20-2. The Arbitration Agreement then states that "[t]he AAA shall administer the arbitration proceedings pursuant to its *Employment Arbitration Rules and Mediation Procedures* then in effect." *Id.* Parties may "clearly and unmistakably" delegate arbitrability issues when the arbitration agreement specifically references the AAA. *Deardorff*, 2022 WL 407396, at *8 (citation omitted). Thus, the Arbitration Agreement here includes a delegation provision.

It is also clear that Mr. Mack has not challenged the delegation provision itself. Throughout his response to the motion to compel arbitration, Mr. Mack argues that various provisions of the Arbitration Agreement itself are unenforceable, but he does not specifically challenge the delegation provision. Because Mr. Mack has not challenged the delegation provision, "the delegation clause must be treated as valid under § 2 of the FAA and questions of arbitrability must be decided by the arbitrator." *Deardorff*, 2022 WL 407396, at *7.

At the same time, the Court has "the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." *MZM*, 974 F.3d at 402. In other words, claiming that there is a lack of mutual assent would also permit Mr. Mack to avoid the issue of arbitrability. *See Carrone v. UnitedHealth Grp. Inc.*, 2021 WL 3520809, at *2 (3d Cir. 2021) (holding that the plaintiff had two avenues around arbitration, one of which was "claim[ing] that the arbitration agreement as a whole lacked mutual assent"); *see also Deardorff*, 2022 WL 407396, at *10 n.11 (citing *MZM*, 947 F.3d at 400) (explaining *MZM* held that "when a party challenges the existence of the container contract or its assent to that contract, *Rent-A-Center* does not apply and a party opposing arbitration need not challenge the delegation provision specifically.").

However, there is a distinction between a contract being void, where the contract itself is non-existent, or voidable, where the contract is in some way legally operative, but one or more of the parties may avoid the contract's legal effect. *Sandvik*, 220 F.3d at 109 n.7; *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 561 n.12 (E.D. Pa. 2003) (citations omitted). "A claim that a contract is *voidable* does not challenge the existence or prima facie validity of the underlying agreement, but charges that inequitable conduct associated with the formation or performance of the agreement renders it *unenforceable* at the election of the aggrieved party." *PLAC, Inc. v. Lamb*, No. 2122 EDA 2015, 2016 WL 5417790, at *6 (Pa. Super. Ct. Aug. 17, 2016) (emphasis added) (quoting *FDA Packaging Inc. v. Advance Pers. Staffing, Inc.*, 73 Pa. D. & C.4th 420, 429-30 (Ct. Com. Pl. 2005)). "A party raises an *enforceability* challenge when they do not dispute a contract exists" but rather does not believe the contract should be enforced "based on contract defenses including duress, frustration of purpose, or unconscionability." *Iezzi v. CrossCountry Mortgage, LLC*, No. 23-2827, 2024 WL 37951, at *5 (E.D. Pa. Jan. 3, 2024) (emphasis added). In other

9

words, "[u]nlike enforceability challenges, parties making contract formation challenges dispute a contract even exists." *Id.*

Here, Mr. Mack argues that the Arbitration Agreement should be rescinded because of undue influence, "mistake/unconscionab[ility]," duress, and surprise; however, Mr. Mack's duress and unconscionability arguments challenge the enforceability of the contract, not the existence of the contract itself. *See id.* Mr. Mack's undue influence argument also speaks to the enforceability of the contract, not whether the contract itself is void because "[w]here one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a matter inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by *undue influence* and is *voidable.*" *Francois v. Francois*, 599 F.2d 1286, 1291 (3d Cir. 1979) (emphasis added) (quoting Restatement (First) of Contracts § 497 (1932)).

Additionally, Mr. Mack's argument that he entered into the Arbitration Agreement by "mistake" because he is "very inexperienced and very unfamiliar with numerous legal terms and languages[,]" P.'s Req. Deny Mot. Compel Arbitration 3, Doc. No. 21, does not show a lack of mutual assent. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained"); *see also Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 101 (D.D.C. 2004) ("Failing to read or understand an arbitration agreement, or an employer's failure to explain it, simply will not constitute 'special circumstances' warranting relieving an employee from compliance with the terms of an arbitration agreement that she signed."). Mr. Mack's argument of surprise that Progressive waited almost two years to enforce the Arbitration

Agreement also does not demonstrate that the Arbitration Agreement is void because a party's surprise to enforce a contract does not mean that the contract is non-existent. *See Sandvik*, 220 F.3d at 107 (holding that a "void" contract is one that is "non-existent"); *see also Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 n.32 (3d Cir. 2007) (citing Restatement (Second) of Contracts § 7, cmt. a (1981)) (holding that the term void is "typically used in contract law to describe contracts that create no enforceable rights or obligations for either party").

Instead, Mr. Mack signing the Arbitration Agreement and not contesting his electronic signature demonstrates his assent to the contract. Because Mr. Mack does not argue a lack of mutual assent, he does not seek avoiding arbitrability through this path. Thus, an arbitrator must decide the issue of arbitrability.

## II.  Disposition of Mr. Mack's Claims

In deciding how to dispose of Mr. Mack's underlying claims, the Third Circuit Court of Appeals has held that "the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Somerset*, 832 F. Supp. 2d at 490 (alteration in original) (quoting *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)). Though neither party has sought a stay pending arbitration in this case, because the arbitrator must first decide the arbitrability of the agreement itself, the Court will stay the case and place it in suspense following the arbitrator's determination on that issue.

### Conclusion

The Court recognizes the impact that the rescission of employment has had on Mr. Mack and the potential discrimination he faced, but the Court must follow the law as it currently stands

with regards to the enforcement of arbitration agreements and delegation provisions. Thus, the Court must grant Progressive's Motion to Compel Arbitration. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE